UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EVERGREEN SOLAR, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) DOCKET NO. |
| | ) |
| SUN & KIM CO., LTD., and | ) |
| DUK SOO KIM, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

### INTRODUCTION

This dispute arises out of the Defendants' simple failure to pay for products ordered from and delivered by Plaintiff Evergreen, a solar power product company. Defendant Sun & Kim – led by its now deposed CEO, Duk Soo Kim, induced Evergreen to provide it with a certain type of solar panels. Evergreen provided Defendants with the panels they ordered, only to have Defendants then claim that the product did not satisfy their requirements and refuse to pay for the products. In the meantime, Defendants had already sold the products to third parties, who in many cases paid for the panels. Defendant Kim absconded with the funds received from those third parties, or otherwise disposed of consideration received, and Plaintiff remains unpaid.

### PARTIES

1. Plaintiff, Evergreen Solar, Inc. ("Evergreen") is a corporation organized under the laws of the State of Delaware, and has its principal place of business at 138 Bartlett Street, Marlboro, Massachusetts. Evergreen is in the business of, among other things, designing, manufacturing and marketing for sale photovoltaic solar panels.

2. Defendant Sun & Kim Co., Ltd. ("S&K") is a Korean company with a principal place of business in Seoul, South Korea.

3. Defendant Duk Soo Kim is an individual Korean citizen who resides, upon information and belief, in South Korea and is the former CEO of S&K.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the Defendants pursuant to M.G.L. c. 223A § 3 and by virtue of the Defendants' contractual submission to this Court's jurisdiction.

5. This Court has subject matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1) and the fact that the amount in controversy exceeds $75,000.

6. Venue in the District of Massachusetts is appropriate pursuant to 28 U.S.C. §1391(a)(3) because Defendants are subject to personal jurisdiction in this district and there is no other district in which this action otherwise may be brought. Defendants have also contractually consented to the venue of this Court.

## STATEMENT OF FACTS

7. On or about June 18, 2009, Evergreen received an order from S&K for the purchase of three megawatts of photovoltaic solar panels from Evergreen for a purchase price of $7,290,000. The order sheet specified ES-A-205 as the model number desired by S&K.

8. In response to S&K's order sheet, S&K and Evergreen agreed that, rather than supply S&K with the ES-A-205 products identified in the order sheet, and in order for Evergreen to be able to deliver to S&K panels with the desired aggregate energy output of three megawatts in the timeframe specified by S&K, Evergreen would sell S&K an aggregate of 15,288 ES-A-205-FA3K and ES-A-205-FA2K panels for $7,516,070.80.

9. The energy output of the ES-A-205-FA3K and ES-A-205-FA2K solar panel products is 205 watts peak ("$W_p$") with a specified margin of variable energy output of +/- 5%, meaning that these panels would actually supply energy of no less than 5% below the actual 205 watt designation and no more than 5% above the 205 watt actual designation.

10. Accordingly, under the +/- 5% rating, a 205 watts peak panel would always provide at least 194.75 watts peak output and no more than 215.25 watts peak output.

11. Upon manufacture, each panel to be sold to S&K by Evergreen was tested to determine its actual power output as of the time of testing under the conditions tested.

12. Evergreen determined that the selection of panels sold to S&K was sufficient to supply the three megawatts of energy output ordered by S&K and to meet the +/- 5% margin of variable energy output specified for the panels supplied.

13. S&K and Kim clearly understood that each panel being supplied would not necessarily always provide 205 $W_p$ output, but that the aggregate actual power output of the total number of panels supplied, taking into account the +/- 5% energy output variability and assuming the panels were properly installed, would provide the three megawatts ordered by S&K. S&K and Kim understood this prior to executing Evergreen's Order Confirmation for the purchase of 15,288 solar panels (the "Solar Panels") at a cost of $7,516,070.80 (the "Order Confirmation").

14. Ethan Hong ("Hong"), on behalf of S&K, signed an Order Confirmation on July 1, 2009, which provides "[p]lease confirm with us the approximate delivery dates, quantities, and terms, by signing this order and faxing it to us." A true copy of the Order Confirmation signed by Hong is attached hereto as Exhibit A.

3

15. The next day, Kim signed the Order Confirmation. A true copy of the Order Confirmation signed by Kim is attached hereto as Exhibit B.

16. Evergreen received the Order Confirmation as signed by Kim and as signed by Hong.

17. The payment terms in the Order Confirmation specified "Net 120 days."

18. The Order Confirmation specifies that Sun & Kim was applying for financing for the purchase of the panels from the United States Export-Import Bank ("Ex-Im").

19. Ex-Im is a United States governmental agency that provides for loans to finance the export of U.S. goods and services to foreign markets.

20. Upon information and belief, when a party applies for Ex-Im financing, the party obtains the loan from Ex-Im, immediately pays off the United States exporter (in this case, Evergreen), and then repays Ex-Im for the loan over time (e.g., after receipt of payment for sale of a product to a third party).

21. Evergreen agreed to supply the panels to S&K based in large part upon S&K's promise to diligently apply for Ex-Im financing for the panels but Evergreen did not agree that payment for the order placed by S&K would be conditioned in any way upon the receipt of any financing from Ex-Im or any other source.

22. The Order Confirmation further specified:

> [y]our referenced order is confirmed and Evergreen's acceptance thereof is expressly conditioned on the terms and conditions set forth in this order confirmation and the Evergreen Solar, Inc. Terms and Conditions or Master Supply Agreement attached or previously agreed to and executed by both Evergreen and customer or your affiliate. Evergreen's rejection of any terms and conditions of your referenced order that are inconsistent with the aforementioned terms and conditions is hereby accepted by Customer.

23. Evergreen's Standard Terms and Conditions sheet (the "Terms and Condition Sheet") provides:

> Any payments due for a purchase order which are not paid when due shall be subject to interest payments at the lesser of one and one-half percent (1.5%) per month or the maximum permitted by law. This requirement shall in no way limit any other remedies available to Evergreen.

24. The Terms and Condition Sheet further provides that a customer may cancel orders only on the following terms:

- without charge if Evergreen receives a written cancellation notice from Customer more than thirty (30) days before the Shipment Date.

- if Evergreen receives a written cancellation notice from Customer within seven (7) to thirty (30) days prior to the Shipment Date; provided, however that Evergreen may charge Customer five percent (5%) of total order amount for such cancellation.

- Customer may not cancel any orders within seven (7) days of the Shipment Date and shall be liable for payment for all such orders.

25. The Terms and Conditions Sheet further provides that:

> THE SALE AND THE TERMS AND CONDITIONS HEREIN SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS, USA WITHOUT REFERENCE TO CONFLICT OF LAWS PRINCIPLES. <u>All disputes shall be resolved by courts in Boston, Massachusetts, USA and Customer consents to the exclusive jurisdiction and venue of such courts</u>.

(emphasis added).

26. On June 24, 2009, S&K also issued a Purchase Money Security Interest to Evergreen, by way of a Security Agreement (the "Security Agreement"), providing Evergreen with:

> a security interest in and mortgages to Secured Party, to secure performance and payment of all present and future debts, obligations or evidences of indebtedness of Debtor to Secured Party, the following described collateral:
>
> All products sold to Debtor by the Secured Party as well as accounts

5

receivable, chattel paper, and proceeds from the sale of such inventory.

27. The Security Agreement further provides that "Debtor shall be in default under this agreement if . . . all indebtedness secured by this agreement is not paid promptly when due."

28. The Security Agreement also provides for resolution of any disputes in Boston, Massachusetts courts and a choice of Massachusetts law.

29. The Security Agreement was signed by Hwang Byeong Yeon, Vice President of S&K.

30. Upon information and belief, when signing the Order Confirmation and at all relevant times before and thereafter, Kim never planned to pay Evergreen for the Solar Panels and planned, rather, to state that the Solar Panels should have had a minimum power output of 205 $W_p$.

31. S&K never attempted to cancel the Order Confirmation.

32. S&K received all of the Solar Panels itemized in the Order Confirmation from Evergreen between July 30, 2009 and August 20, 2009.

33. Evergreen included in each pallet of Solar Panels the testing data on wattage output for the panels.

34. S&K accepted the Solar Panels and, upon information and belief, in turn sold and installed a large quantity of them at various solar power plants in Korea.

35. Upon information and belief, Kim and/or S&K then absconded with any and all funds received from the third party purchasers of the Solar Panels or wrongfully assigned the receipt of any further payments due from the third party solar plants to other S&K creditors.

36. On November 30, 2009, Evergreen received a payment of $200,000 from S&K to be applied to the sum due pursuant to the Order Confirmation.

6

37. On December 4, 2009, Evergreen received a payment of $927,410 from S&K to be applied to the sum due pursuant to the Order Confirmation.

38. Upon information and belief, Kim is no longer CEO of S&K.

39. Upon information and belief, Kim greatly harmed, if not destroyed, the chances that S&K would receive Ex-Im funding for the Solar Panels.

40. Evergreen has not received any further payments from S&K, or any other party, for the Solar Panels.

## COUNT I - Breach of Contract
### (against S&K)

41. Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-40 above.

42. The Order Confirmation (as governed by the Terms and Conditions Sheet) (the "Contract") is a valid and enforceable contract for the sale of goods between S&K and Evergreen.

43. Evergreen performed its obligations under the Contract in a timely, complete and adequate manner.

44. S&K breached the Contract by refusing to pay the full contract amount for the Solar Panels, after receiving, accepting, reselling, and reaping the benefits of the Solar Panels.

45. Evergreen has been harmed by S&K's breach of contract and is entitled to recover the full contract price for the Solar Panels from S&K, along with interest, as specified in the Terms and Conditions Sheet, from November 20, 2009 to the time Evergreen receives payment in full, along with any and all incidental damages and costs of collection to be proven at trial.

## COUNT II - Goods Sold and Delivered
### (against S&K)

46. Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-45 above.

47. The Contract provided for payment of $7,516,070.80 for the Solar Panels.

48. S&K received all of the Solar Panels by August 20, 2009.

49. S&K accepted the Solar Panels.

50. S&K did not reject the Solar Panels or revoke its acceptance of the Solar Panels.

51. S&K has paid Evergreen $1,127,410.62 for the Solar Panels.

52. S&K owes Evergreen the remaining $6,388,660.18 in contract price for the Solar Panels, along with interest as specified in the Terms and Conditions Sheet from the date of default to the date Evergreen receives payment in full for the Solar Panels.

53. S&K is also liable for certain other incidental damages, pursuant to G.L. 106 § 2-709, in an amount to be proven at trial.

## COUNT III - Fraud (Fraud in the Inducement)
### (against Kim and S&K)

54. Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-53 above.

55. S&K and Kim told Evergreen that S&K wanted to purchase ES-A-205-FA3K and ES-A-205-FA2K panels with an output of +/- 5%, and that S&K would obtain Ex-Im financing to pay Evergreen for the Solar Panels.

56. At all relevant times, S&K and Kim knew that such panels would have an energy output of +/- 5% 205 watts peak.

8

57. Relying on S&K's stated desire to purchase the ES-A-205-FA3K and ES-A-205-FA2K panels with an output of +/- 5%, Evergreen supplied S&K with the Solar Panels.

58. At all relevant times, S&K and Kim knew that they would not pay for the very Solar Panels and would, rather, later attempt to evade payment by claiming that the Solar Panels should have had a minimum power output of 205 $W_p$.

59. Evergreen reasonably relied on S&K's and Kim's statements in believing that S&K desired the ES-A-205-FA2K and ES-A-205-FA3K panels and that S&K and Kim wanted and expected an aggregate energy output of three megawatts in purchasing the Solar Panels, with each panel providing an energy output of +/- 5% 205 watts peak.

60. After Evergreen supplied S&K with the Solar Panels, S&K has refused to pay in full for the Solar Panels, claiming that their energy output is not as high they expected, which assertion is also knowingly and intentionally false and fraudulent.

61. S&K's and Kim's conduct in inducing Evergreen's sale to S&K of the Solar Panels, and their later refusal to pay Evergreen in full for the Solar Panels, caused Evergreen substantial harm.

## COUNT IV – Tortious Interference with Contract
### (against Kim)

62. Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-61 above.

63. Evergreen has a valid and enforceable contract with S&K for the sale of the Solar Panels.

64. Kim knowingly and intentionally induced S&K to breach that contract.

65. Kim's interference with the contract between S&K and Evergreen was improper in that Kim knowingly and intentionally planned to (1) induce Evergreen to ship the panels to

S&K; (2) later refuse payment for such panels, on the false basis that the panels did not supply adequate energy output; and (3) nevertheless collect payment from third parties to which S&K sold the panels; and (4) abscond with such funds or otherwise convey the consideration received or to be received for such panels.

66. Evergreen was substantially harmed by Kim's interference with its contract with S&K.

## COUNT V - Conversion
### (against Kim)

67. Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-66 above.

68. Kim intentionally and wrongfully took possession of the funds that S&K collected from third-party solar power plants upon reselling and installing the Solar Panels ("the Power Plant Funds").

69. Kim has retained possession of the Power Plant Funds.

70. Evergreen is the rightful owner of the Power Plant Funds, pursuant to the Security Agreement.

71. Kim has no right of possession, ownership or control of the Power Plant Funds.

72. Evergreen has been harmed by Kim's continued intentional and wrongful possession of the Power Plant Funds.

## COUNT VI - Fraudulent Transfer
### (against Kim)

73. Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-72 above.

74. As set forth above, Kim currently has possession of the Power Plant Funds, which belonged to Evergreen in order to satisfy the Order Confirmation.

75. Rather than turn over the Power Plant Funds to Evergreen upon their collection, Kim transferred the funds to his own possession and, upon information and belief, either still holds the Power Plant Funds or has dissipated them.

76. Further, upon information and belief, with respect to other funds owed to S&K for the purchase by third parties of the Solar Panels, Kim has wrongfully assigned the right to those payments to other, unsecured creditors of S&K.

77. Upon information and belief, Kim transferred and/or conveyed the right to the Power Plant Funds with the actual intent to hinder, delay, or defraud Evergreen, a secured creditor of S&K.

78. As a result of these transfers, Kim caused a diminution of the assets of S&K available for creditors.

79. S&K received no consideration for the transfer of funds owed to S&K by Kim.

80. Kim made these transfers well after Evergreen threatened S&K with suit over payment for the Solar Panels.

81. Further, upon information and belief, S&K was rendered insolvent by Kim's transfer of the Power Plant Funds to himself and/or conveyance of the right to further funds to unsecured creditors of S&K.

82. The transfers of the Power Plant Funds to Kim and the conveyance of the right to further funds to unsecured creditors of S&K were fraudulent and the Court should order Kim to disgorge the Power Plant Funds and pay them over to Evergreen.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Evergreen respectfully requests that this Court:

a. Grant Evergreen judgment on each of its claims;

b. Order S&K to pay the remaining contract amount ($6,388,660.18), plus incidental damages, costs of collection, and contractual interest from the date of default to the date of payment in full;

c. Grant Evergreen such further and other relief as the Court deems just and proper, including interest, costs and attorney's fees incurred in this action.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE**

Dated: January 20, 2011

Respectfully submitted,

EVERGREEN SOLAR, INC.,

By Its Attorneys,

_____
Sean T. Carnathan (BBO #636889)
scarnathan@ocmlaw.net
Tara J. Myslinski (BBO #644936)
tmyslinski@ocmlaw.net
O'Connor Carnathan & Mack LLC
Landmark One
1 Van de Graaf Drive, Suite 104
Burlington, MA  01803
Telephone:  781.359.9000
Facsimile: 781.359.9001